RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE ___5___,__29__,_08_
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

REGINALD BERRY                          CIVIL ACTION NO. 07-1860
    La. DOC #292737
VS.                                     SECTION P

JEFF WINDHAM, WARDEN                    JUDGE DRELL

                                        MAGISTRATE JUDGE KIRK

<u>REPORT AND RECOMMENDATION</u>

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on November 5, 2007 by *pro se* plaintiff Reginald Berry. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Richland Parish Detention Center, Rayville, Louisiana, however, when he filed this complaint, he was incarcerated at the LaSalle Correctional Center (LCC), Olla, Louisiana. He complains of conditions of confinement at LCC and prays for compensatory damages of $40 million. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

### Statement of the Case

#### 1. Procedural Chronology

On November 5, 2007, plaintiff, and his fellow LCC inmates Gregory Cummings, Craig Wright, Andrew Jordan Mario Johnson, and Sammy Davis filed a civil rights complaint concerning prison conditions at LCC. [rec. doc. 1][1]

On December 12, 2007, plaintiff advised the court of his transfer to the St. Martin Parish Jail, Breaux Bridge, Louisiana. Therein, he claimed that his transfer was an act of retaliation triggered by the filing of the original complaint.[rec. doc. 7] Plaintiff also alleged that he was placed in lock down on November 18, 2007 and remained in lock down until December 12, 2007. The letter, however, was mailed on December 10, 2007. [doc. 7, p. 3] On January 7, 2008 plaintiff notified the court that he had been transferred to the Rivers Correctional Center, Ferriday, Louisiana. [rec. doc. 12]

On January 23, 2008, plaintiff's application to proceed *in forma pauperis* was submitted to the court. [rec. doc. 18] On January 25, 2008 his motion to proceed *in forma pauperis* was

---

[1] On January 9, 2008, Sammy Davis filed a voluntary motion to dismiss which was granted on January 10. [rec. doc. 14] On February 21, 2008, the undersigned, citing Local Rule 3.2W of the this court, severed the claims of Cummings, Wright, Jordan and Johnson, and ordered each plaintiff to file a separate suit. [rec. doc. 26] A review of the court's records reveals that inmates Gregory Cummings, Craig Wright, Andrew Jordan, and Mario Johnson have not re-filed their complaints

2

granted. [rec. doc. 19]

On February 1, 2008 plaintiff advised the court that he was transferred back to the LCC. He also complained that he and his fellow plaintiffs' legal correspondence had been opened by prison authorities. Finally, he advised that as a result of this litigation, "... my life has now been place in harms way or danger..." [rec. doc. 20] On February 28, 2008 mail addressed to plaintiff was returned as undeliverable. [rec. doc. 29]

On March 17, 2008 plaintiff advised that on March 6, 2008 he was transferred from the Rivers Correctional Center in Ferriday to the MPP in Bastrop. Plaintiff further advised that upon his arrival at MPP, he was placed in Administrative Lock-Down "for no apparent reason" since plaintiff had not violated any prison disciplinary rules.  According to plaintiff he remained in lock-down, in violation of his Fourth Amendment rights, until March 11, 2008.  According to plaintiff, his grievances both at MPP and LCC have gone unanswered. Further, he asked for prompt resolution of his complaint. [rec. doc. 31]

On April 3, 2008 plaintiff was ordered to amend his complaint to provide specific information about his claims. [rec. doc. 32] On April 15, 2008 he submitted an amended complaint. [rec. doc. 33]

## 2. *Plaintiff's Complaint*

In the original complaint filed on November 5, 2007,

3

plaintiff complained in general of the conditions of confinement at LCC.[2] Since his complaint alleged no details concerning specific violations of his civil rights, plaintiff was directed to amend.

### 2. Amended Complaint

In the amended complaint filed on April 15, 2008, plaintiff alleged:

1. On September 10, 2007 plaintiff, while exiting his bunk, fell and "fractured his knee and twisted his ankle." He requested medical attention but was told that the medical staff was gone for the day. Plaintiff was advised to submit a "sick call" form the next morning when the medical staff returned for duty. According to plaintiff his knee and foot began to swell and his "sick call" was never answered.

2. Inmates occupying bottom bunks are required to place both

---

[2] (1) The beds are too high and there are no ladders; (2) Inmates have only one set of "changing" clothes; (3) Spoons are plastic and are never sanitized; (4) The kitchen practices are unsanitary, because the tables are not wiped; (5) Guards slap Black inmates in the face in the Warden's and Assistant Warden's and Major's presence and they do not use their authority to correct the guards; (6) Inmates with "flat time" receive no incentive pay; (7) Inmates must purchase toilet paper from the State store; (8) Food that LDOC provides is sold to the inmates for $5.00 to $6.00/plate; (9) If the prison "run out of food", the inmates do not eat and are served whatever is left on the "plate line;" on October 1, 2007 plaintiff was given plain rice; (10) The prison medical staff is not on duty at night and on October 8, 2007 inmate Dennis Hebert suffered a heart attack and was resuscitated by one of his fellow inmates, however, he died the following day; (11) Inmates receive no dairy products, cheese, milk or fruit; (12) Inmates are not provided coats during winter; (13) Inmates are not allowed to get under their blankets during the day; (14) The drinking water is contaminated; (15) Prisoners purchase eggs; (16) Prisoners must pay for medical attention; and, (18) Prisoners have been exposed to tuberculosis.

4

feet on the floor during roll call; on September 12, 2007 at the
6:00 a.m. roll call, plaintiff was unable to place his feet on
the floor as a result of the injury he sustained on September 10.
An unnamed Corrections Officer ordered plaintiff into the foyer.
Another unnamed Corrections Officer confronted plaintiff about
violating the roll call rule and then slapped plaintiff on the
left side of his face "cracking" one of plaintiff's teeth.
According to plaintiff, he is unable to identify the Corrections
Officers because they were not wearing name tags.

   3. Plaintiff arrived at LCC on August 4, 2007. Upon arrival
he was issued 1 orange jump suit, two pair of used underwear, a
toothbrush, a bar of soap, a cup, a tube of toothpaste, an old
sheet (with holes) and a blanket. However, according to
plaintiff, newly arrived white prisoners received 2 orange jump
suits, 2 pair of new underwear, 2 bars of soap, 2 pairs of new
socks, 2 new sheets, 1 new pillow case, a tube of toothpaste, a
toothbrush, and a cup. When plaintiff pointed out the
discrepancy, an unnamed officer uttered a racial epithet.

   Plaintiff wore his jumpsuit for 2 weeks then sent it to be
washed. Since he had only one jumpsuit, he missed lunch because
he had no clothes.

   On October 28, 2007 plaintiff and his fellow inmates were
ordered onto the yard. Plaintiff asked the officer for a coat
asserting that it was 30° outside. Plaintiff was told to either

go outside or he would be placed somewhere where he would need a coat. After 2 weeks, plaintiff caught the flu and was unable to leave his bed. Plaintiff requested "sick call" but was not treated. His grievance was also not answered.

4. On August 25, 2007 plaintiff placed a white face towel in a cup and filled it with drinking water because he suspected that the water was the cause of his frequent illness. The towel turned brown in seconds and when plaintiff brought this to the attention of Warden Jeff Windham he was placed in lock-down.

5. Plaintiff claims that the LDOC provides a monthly accounting of incentive pay for inmates serving "flat-time." Plaintiff claimed that LCC provides no monthly accounting which resulted in plaintiff's inmate account reading $0.00 thus prohibiting plaintiff from forwarding payment to the court.

6. Plaintiff was provided one roll of toilet paper each Friday. On Wednesday, November 2, 2007 he ran out and requested another roll. He was told to either wait until Friday, or purchase a roll from the prison commissary. Since his fellow inmates would not lend him toilet paper, plaintiff used his face towel in place of toilet paper.

7. On October 1, 2007 plaintiff was served only plain rice for a meal. He claims that he is unable to afford the food sold at the commissary and therefore he received an unbalanced diet high in starch which caused him to lose 28 pounds. (Plaintiff

6

also claims that this diet may cause him to develop diabetes.) He claims that LCC sells food supplied by the LDOC. Plaintiff also complained that he was hungry for weeks at a time because the food that was served was undercooked or bad.

### 3. *Summary of Plaintiff's Claims in Chronological Order*

Plaintiff arrived at LCC on August 4, 2007 and he was incarcerated there until December 2007 when he was transferred to the St. Martin Parish Detention Center. [rec. doc. 7] He was returned to LCC for a brief period in January-February, 2008.[rec. docs. 20, 29, 31] However, none of his present complaints, which occurred between August – November, 2007, arose during this later incarceration.

Upon his arrival he was issued clothing and toiletries but complains that white inmates received either more or better quality clothing and toiletries. He complained to a guard about the discrepancy and the officer uttered a racial epithet and threat.

Plaintiff missed one meal because he sent his jump suit to the laundry and had nothing to wear to the dining hall.

On August 25, 2007 plaintiff conducted a test on the water by placing a white washcloth in a container with water. The washcloth turned brown in short order and plaintiff brought this to the attention of Warden Windham. Windham had plaintiff placed in lock-down.

7

On September 10, 2007 plaintiff fell out of the top bunk he was occupying and injured his knee and ankle. He requested immediate medical attention, but, since no medical staff were on duty, his request was denied. His knee and ankle began to swell. On the following date he requested medical attention but his request was never answered.

On September 12, 2007 plaintiff was unable to comply with roll call protocol which mandates that each inmate place both feet on the floor. He was ordered into the foyer where he was insulted then slapped by an unknown corrections officer. As a result of the slap, plaintiff sustained a "cracked" tooth.

On October 1, 2007 he was served a meal which consisted of a plate of plain rice.

On October 28, 2007 he was ordered outside and denied a coat and insulted by an unnamed corrections officer. Two weeks later he contracted the flu and was confined to his bed for an undisclosed period of time. He was not permitted to cover himself with his blanket during the day and his requests for medical attention were ignored.

On November 2, 2007 he ran out of his weekly allotment of toilet paper; he was told to wait 2 days until the next allotment, or to purchase toilet paper from the commissary. Instead, he used his face cloth as toilet paper.

He claims that the LCC does not provide an incentive pay

8

balance on a monthly basis and, he implies that this interfered with his access to the court.

### Law and Analysis

#### 1. Frivolity Review

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. Booker v. Koonce, 2 F.3d 114, 115 (5th Cir.1993); see, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. Wilson v. Barrientos, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A

9

district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe in forma pauperis complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. Neiztke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or

10

delusional). <u>Hicks v. Garner</u>, 69 F.3d 22, 25 (5th Cir.1995);
<u>Booker v. Koonce</u>, 2 F.3d 114, 115 (5th Cir.1993); <u>Denton v.
Herndandez</u>, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340
(1992). Plaintiff filed an original and amended complaint; he has
alleged facts in support of some claims and need not be permitted
to amend the complaint again.

### Law and Analysis

Taken as a whole, plaintiff's original complaint and his
amended complaint raise several distinct issues which may be
addressed in four categories:

#### 1. General Conditions of Confinement

Plaintiff, in his original complaint, alleged he and his
fellow inmates were exposed to unconstitutional conditions of
confinement. He complained that the beds were too high and no
ladders were provided. He alleged that the clothing allotment was
inadequate; and he complained of unsanitary eating utensils and
kitchen practices. He complained of contaminated drinking water.
He complained that he and his fellow prisoners were exposed to
tuberculosis.  He also complained of inadequate and poor quality
of food; specifically he complained that no dairy products or
fruit is served. Specifically he argued that he was forced to
miss 1 meal because of the inadequate clothing allotment; and, he
was required to be out doors in cold weather without a jacket and
as a result he contracted the flu. He also complained that on

11

another occasion he was served only plain rice.  He claims that the dietary inadequacies have resulted in him losing 28 lbs.

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. Thus, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain. See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. Harper v. Showers, 174 F.3d 716, 719 (5th Cir.1999). Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. Harper, 174 F.3d at 719. First, there is an objective requirement to demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.1995); Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. Woods, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

12

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id*. However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id*." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998).

None of the individual complaints alleged in the original complaint arise to the level of Eighth Amendment violations. Plaintiff was not denied any of life's necessities during his 3 to 4 month stay at LCC – he was provided shelter, a bed, clothing, hygiene, and food.

As shown above, federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neiztke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff's claim that he lost 28 lbs. during the 3 -4 months that he was incarcerated strains credulity. The undersigned is not convinced that such dire conditions might likely befall a

13

person who, by his own admission, missed only 1 meal during the period he was incarcerated at LCC. Further, it is interesting to note that plaintiff did not complain of any physical injury resulting from the allegedly inadequate diet in his original petition; nor did he complain of injury resulting from the height of his bed; nor did he complain about any physical ailment resulting from the denial of a jacket; nor did he complain of being injured by a corrections officer.

Nevertheless, even if the various claims of injury are accepted as true, plaintiff has alleged no more than *de minimis* injury[3] and that fact should be sufficient to warrant dismissal

---

[3] In Luong v. Hatt, 979 F.Supp. 481 (ND Tex. 1997),the court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims.  The court reasoned that the determination of whether or not an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." Luong, 979 F. Supp. at 486. The court reasoned, "Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Id.*

Plaintiff was directed to provide a detailed description of his injuries. In response he has alleged that the conditions complained of caused a "fractured" knee and a "twisted ankle;" weight loss; and a bout with the flu. His claim of

14

of his conditions of confinement claim. Plaintiff, at worst, was inconvenienced; the conditions complained of cannot rationally be equated to cruel and unusual punishment since the deprivation was not so extreme as to "... rise to a level that results in physical torture..." Bradley v. Puckett, 157 F.3d at 1025. Plaintiff's Eighth Amendment conditions of confinement claim is frivolous.

### (2) General Administrative Practices

Plaintiff claims that the LCC authorities provided no incentive pay to Department of Corrections prisoners. He also complains that he and his fellow prisoners are charged for extra toilet paper, extra food, and medical care.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[4]

---

sustaining a "fractured" knee is conclusory. He provides none of the detail requested in the order to amend. Further, it is noted that he made no mention of injury, serious or otherwise, in his original complaint. While the undersigned must conclude that plaintiff's knee was injured when he fell, the undersigned need not accept as true that plaintiff's knee was "fractured"– a condition that would probably require surgery. In short, the undersigned must conclude that plaintiff's injuries were in the nature of a sprain, a strain, or a contusion. None of these conditions necessarily require treatment by a medical care professional. All are treatable in the home with common over-the-counter medications.  In short, plaintiff's alleged injuries are de minimis.

[4] Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

15

Here, plaintiff maintains only that the defendants violated Louisiana law, specifically, statutes dealing with "good time" and "incentive pay" and various Louisiana Department of Corrections policies with regard to the computation and posting of "incentive pay." Thus, he has failed to state a claim for which relief may be provided.

Further, his claims concerning the requirement that prisoners pay for medical care, extra toilet paper, or extra food are likewise unavailing. Policies such as "co-pay" policies or "fee-for-service" programs which require inmates to bear part of the cost of their medical treatment are constitutionally permissible so long as the policy or procedure does not interfere with timely and effective treatment of serious medical needs. Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy); Shapley v. Nevada Bd. of State Prison Comm's, 766 F.2d 404 (9th Cir.1985) (co-pay policy); Cameron v. Sarraf, 2000 WL 33677584, at *3-5 (E .D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); Reynolds v. Wagner, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); Johnson v. Dept. of Public Safety and Correctional Services, 885 F.Supp. 817 (D.Md.1995) (co-pay policy). In other words, nothing

---

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

in the United States Constitution guarantees inmates the right to be entirely free from costs associated with medical treatment. Reynolds, 128 F.3d, at 175. It is only when necessary medical care is denied to impecunious inmates that the Eighth Amendment is implicated. See, e.g., Collins v. Romer, 962 F.2d 1508, 1514 (10th Cir.1992); Johnson, 885 F.Supp. at 820.

Likewise, plaintiff can point to no Constitutional provision which prohibits prisons from charging prisoners for extra food or hygiene supplies. Thus, plaintiff's claims concerning the LCC's general administrative practices are frivolous.

### (3) Medical Care

Plaintiff generally complained that LPP did not provide 24 hour medical staffing. He then complained that he was denied medical care for an injury sustained when he fell from his bed on September 10, 2007; he also complained that he was denied treatment for the flu he contracted in October-November, 2007.

Medical care claims asserted by convicted prisoners, like plaintiff, are, like the conditions of confinement claims, analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment.  In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

17

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. Thompson v. Upshur County, Texas, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir.1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999).

As noted above, plaintiff's claims of physical injury and illness are dubious at best. He made no mention of physical injury or sickness in his original complaint. Further, as shown above, neither the injury nor the illness appear to have been more than *de minimis*.

18

Additionally, plaintiff has not alleged that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn by the delay in providing care. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that they subjectively intended that harm occur to him. Thompson v. Upshur County, Texas, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not these defendants, or any others, "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir.1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999).

In short, the facts alleged herein do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims against are therefore frivolous and dismissal on that basis is recommended.

### (4) *Excessive Force and Retaliation*

More problematical are plaintiff's allegations that Black

19

inmates, including himself, were subject to physical brutality by unnamed corrections officials. Plaintiff also complained that Black inmates, including plaintiff were subjected to racial insults and epithets. Plaintiff also claims that he was placed in administrative segregation in retaliation for demonstrating the unhealthy qualities of the drinking water to the warden. Finally, according to the complaint, plaintiff was struck in the face by an unnamed corrections officer on September 12,2007. As a result of this blow, plaintiff claims that his tooth was "cracked."

### a. *Excessive Force in General*

Plaintiff lacks standing to assert the general claim of excessive force with respect to inmates other than himself. To satisfy the standing requirement, a plaintiff must demonstrate: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision of the district court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury must be "actual or imminent, not 'conjectural or hypothetical.' "Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). While the actions of the guards, if true, is deplorable, plaintiff lacks standing to assert that claim.

### b. *Racial Epithets and Slurs*

Likewise his complaint, to the extent that it involves

20

allegations of racial slurs and derogatory epithets does not state a cognizable civil rights claim. Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir.1993). These, of course, are troubling allegations; nevertheless, the law does not recognize such claims in this context.

### c. Retaliation

Plaintiff has not alleged facts sufficient to state a claim for retaliation. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Retaliation claims under § 1983 are permitted, indeed encouraged, in order to ensure that prisoners are not discouraged from exercising rights guaranteed by our Constitution. Morris v. Powell, 449 F.3d 682, 686 (5th Cir.2006). Nevertheless, some so-called retaliatory acts, even those clearly motivated by retaliatory intent, are so de minimis that they would not deter an ordinary person from further exercise of his rights. Id. Such

21

*de minimis* retaliatory acts do not rise to the level of
constitutional violations and thus cannot form the basis of a
§ 1983 claim. *Id*.  The retaliatory adverse act complained of
herein is plaintiff's confinement in administrative segregation
for an undetermined period of time.[5] Clearly, this "adverse act"
is *de minimis* and would be unlikely to, and indeed, did not,
discourage plaintiff from exercising his right to complain about
conditions of confinement.[6]

In addition, plaintiff's retaliation claim is susceptible to
summary dismissal on the issue of causation. Causation requires a
showing that "but for the retaliatory motive the complained of
incident ... would not have occurred." <u>Johnson v. Rodriquez</u>, 110
F.3d 299, 310 (5th Cir.1997) (quoting <u>Woods</u>, 60 F.3d at 1166),
*cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400
(1997); <u>McDonald v. Steward</u>, 132 F.3d 225 (5th Cir. 1998).  "The
inmate must allege more than his personal belief that he is the

---

[5] According to plaintiff, he was ordered into lock-down on August 25,
2007; by September 10, 2007, the date he fell from bed, he was obviously back
in general population. At most, he spent 16 days in administrative
segregation.

[6] Indeed the retaliatory adverse act identified in <u>Morris v. Powell</u>,
*supra*, involved that plaintiff's transfer from employment in the prison
commissary to the kitchen for a period of one week.  While conditions were
arguably "unpleasant" when compared to the previous job assignment, the court
determined, "Nothing in this sequence of events could support an inference
that [plaintiff's] job transfers would have deterred him from the exercise of
the right to file grievances. <u>The transfers may have had a retaliatory motive,
and [plaintiff] may have experienced discomfort for a few days as a result,
but there is no evidence that the job transfers were more than *de minimis*</u>. The
standard adopted herein is designed to discourage precisely such claims of
<u>inconsequential retaliation</u>." 449 F.3d at 687.

victim of retaliation." <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir.1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom* <u>Palermo v. Woods</u>, 516 U.S. 1084(1996)).

Plaintiff's claim that his confinement to lock-down was an act of retaliation, is unsupported by the record.  Indeed, his assertion is purely conclusory. Thus, plaintiff has not shown that he would not have been confined to lock-down "but for" a retaliatory motivation. <u>Woods</u>, 60 F.3d at 1166.

Consequently, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 4. *Excessive Force*

Finally, plaintiff has come closer to stating a claim for which relief might be granted with respect to his excessive force claim; however, he has not identified or named the person responsible for the act. As shown above, plaintiff has sued only Warden Windham despite having been provided the opportunity to amend and identify the party responsible for the use of force against his person.

Plaintiff implies that Warden Windham is liable because of

23

his position of authority.[7] It is well settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. <u>Mouille v. City of Live Oak</u>, 977 F.2d 924 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); <u>Jennings v. Joshua Indep. Sch. Dist.</u>, 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. <u>Cronn v. Buffington</u>, 150 F.3d 538, 544 (5th Cir.1998).

Plaintiff fails to make sustainable allegations which would establish supervisory liability on the part of a supervisory official. To establish the personal liability of the defendant plaintiff must show that his personal action or inaction violated his civil rights. <u>Reimer v. Smith</u>, 663 F.2d 1316, 1322

---

[7] Plaintiff made no allegations of fault with respect to Warden Windham in his amended complaint. In his original complaint he alleged that guards slapped Black inmates in the Warden's presence and the Warden did not exercise his authority to correct the guards. However, plaintiff has nowhere alleged that Warden Windham was present or otherwise condoned the use of force against the plaintiff on September 12, 2007. As is shown below, "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10, 112 S.Ct. 995 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis* use of force, <u>such as a slap or a shove, does not implicate constitutional concerns</u>. *Id.*; <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193-94 (5th Cir.1997). Thus, even if Warden Windham observed the occasional slap or shove, that would be insufficient to visit liability upon him.

n. 4 (5th Cir.1981).  Plaintiff has alleged no facts to establish that the defendant was personally involved in the events that form the basis of this claim.

Further, plaintiff failed to allege that the defendant implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights.  Accordingly, plaintiff has failed to state a claim pursuant to § 1983 against Warden Windham.

Finally, plaintiff sustained a single slap to the side of his face. While plaintiff claims that this blow "cracked" a tooth, he has failed to allege the specifics of an injury despite having been directed to do so. In the excessive-force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)."That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10, 112 S.Ct. 995 (quoting Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078 (1986). A *de minimis* use of force, such as a slap or a shove, does not

25

implicate constitutional concerns. *Id.*; <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193-94 (5th Cir.1997) (bruised ear lasting for three days after guard twisted inmate's ear and held his arm behind his back was *de minimis* and did not state a claim for excessive force); <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th Cir.1993) (inmate who suffered no injury when sprayed with a fire extinguisher was exposed to a *de minimis* use of force and his claim was properly dismissed as frivolous).

### 5. *Conclusion*

Plaintiff filed a general complaint concerning conditions of confinement; the complaint was determined to be deficient in that no specifics were alleged. Plaintiff was afforded the opportunity to amend his complaint to provide more specific details concerning the alleged violations of his constitutional rights. He amended the complaint and that amended complaint has been reviewed. For the reasons stated above,

**IT IS RECOMMENDED** that petitioner's complaint and his amended complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation

26

have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana, May 29, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

27